**No. 15-16429**
_____

*In the*

# United States Court of Appeals
*for the*
# Ninth Circuit
_____

OWNER-OPERATOR INDEPENDENT
DRIVERS ASSOCIATION, INC.,
et al.,

*Plaintiffs-Appellants,*

v.

RICHARD COREY, et al.,

*Defendants-Appellees.*
_____

*On Appeal from a Judgment in the*
*United States District Court for the District of California*
*Case No. 2:14-CV-00186-MCE-AC, Honorable Judge Morrison C. England, Jr.*
_____

**APPELLANTS' REPLY BRIEF**
_____

PAUL D. CULLEN, SR.
DANIEL E. COHEN
PAUL D. CULLEN, JR.
The Cullen Law Firm, PLLC
1101 30th Street NW, Suite 300
Washington, DC 20007
Tel: (202) 944-8600
Fax: (202) 944-861

March 7, 2016                    *Counsel for Appellants*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ................................................................ iii

ARGUMENT ...................................................................................... 1

I.    THE DISTRICT COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT IT WAS DIVESTED OF FEDERAL QUESTION JURISDICTION OVER THE INTERSTATE TRUCKERS' CIVIL RIGHTS CLAIMS ................................................. 1

    A.  CARB Did Not Obtain EPA's Approval to Prosecute Interstate Truckers in Violation of the Commerce Clause .................................. 1

    B.  The EPA's Failure to Certify That the SIP Would Have "Nationwide Scope or Effect" as Required by Section 307(b)(1) of The Act Clean Air Confirms It Did Not Approve CARBs Unconstitutional Conduct .................................................................. 5

    C.  The *Dump Truck* Case is Materially Distinguishable ....................... 9

    D.  CARB's Unconstitutional Conduct is Subject to Direct Challenge .. 13

II.    EPA IS NOT A NECESSARY AND INDISPENSABLE PARTY ....... 14

CONCLUSION .................................................................................. 15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Accord State of Alabama v. United States EPA,*
  871 F.2d 1548 (11th Cir. 1989) ...........................................................11

*Am. Trucking Associations, Inc. v. E.P.A.,*
  600 F.3d 624 (D.C. Cir. 2010)...........................................................13

*California Dump Truck Owners Ass'n v. Nichols,*
  784 F.3d 500 (9th Cir. 2015) .................................................... 9, 10, 14

*Dalton Trucking, Inc. v. United States Environmental Protection Agency,*
  808 F. 3d 875 (D.C. Cir. 2015)...................................................... 6, 7, 8

*Envtl. Tech. Council v. Sierra Club,*
  98 F.3d 774 (4th Cir. 1996) ...............................................................11

*Hamilton v. State Farm Fire & Cas. Co.,*
  270 F. 3d 778 (9th Cir. 2001) ..............................................................14

*Louis v. U.S. Dep't of Labor,*
  419 F.3d 970 (9th Cir. 2005) ...............................................................4

*Missouri v. United States,*
  109 F.3d 440 (8th Cir, 1997) ..............................................................12

*National Solid Wastes Mgmt. Ass'n. v. Alabama Dept. of Environmental Mgmt.,*
  910 F.2d 713 (11th Cir. 1990) ...........................................................11

*OOIDA v. EPA,*
  622 Fed. Appx. 4 (D.C. Cir. 2015) .............................................. 13, 14

*Virginia v. United States,*
  74 F.3d 517, 523 (4th Cir. 1996) .......................................................12

## <u>Statutes</u>

42 U.S.C. § 1983 ................................................................ 4, 8, 14

42 U.S.C. § 7543(b) ................................................................13

42 U.S.C. § 7607(b)(1) ............................................................5, 6

42 U.S.C. § 7607(d)(3) ............................................................3, 11

42 U.S.C. § 7607(d)(3)(C) ..........................................................15

## <u>Regulatory Proceedings</u>

*Approval and Promulgation of Implementation Plans*,
   76 Fed. Reg. 40652 (EPA, July 11, 2011) ...........................................2

## <u>Rules</u>

Fed. R. Civ. P. 19(a)(1)(B)(i)(ii) ...............................................15

## <u>Other Authorities</u>

California Environmental Regulation,
   Cal. Code Regs. tit. 13, § 2025 ................................................7

The Bus and Truck Regulation,
   Cal. Code Regs. tit. 13, § 2449 ...............................................6, 7

## ARGUMENT

**I.    THE DISTRICT COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT IT WAS DIVESTED OF FEDERAL QUESTION JURISDICTION OVER THE INTERSTATE TRUCKERS' CIVIL RIGHTS CLAIMS**

### A.    CARB Did Not Obtain EPA's Approval to Prosecute Interstate Truckers in Violation of the Commerce Clause

The CARB Defendants seek to avoid judicial review of their historically unprecedented violation of the Commerce Clause on the ground that the EPA's SIP Decision recited that "we know of no obstacle under Federal or State law" to CARB's ability to implement the Truck and Bus Regulation (the "Regulation").  *See* Appellees' Brief at 8, 19.  This argument is demonstrably meritless.  As an initial matter, the CARB Defendants have completely divorced the EPA's statement in this regard from its legitimate context.   The EPA's statement related *solely* to its discussion of whether the Clean Air Act *preempted* the implementation of the Regulation, thus requiring a formal *waiver* proceeding.   It made *no reference whatsoever* to whether the Regulation would, or could, be enforced against thousands of interstate truckers – at a cost of billions of dollars – *without violating the Commerce Clause* of the United States Constitution.  The EPA stated:

> A.    *Moreover, we know of no obstacle under Federal or State law in CARB's ability to implement the regulations.* As a general matter, the CAA assigns mobile source regulation to EPA through title II of the Act and assigns stationary source regulation and SIP development responsibilities to the States through title I of the Act. In so doing, the CAA **preempts** various types of State regulation of mobile sources as

1

set forth in section 209(a) (***preemption*** of State emissions standards for new motor vehicles and engines), section 209(e) (***preemption*** of State emissions standards for nonroad vehicles and engines) and section 211(c)(4)(A) [***preemption*** of State fuel requirements for motor vehicles, i.e., other than California's motor vehicle fuel requirements—see section 211(c)(4)(B)]. For certain types of mobile source standards, the State of California may request a ***waiver*** or authorization for state emissions standards. See CAA sections 209(b) (new motor vehicles) and 209(e)(2) (most categories of new and non-new nonroad vehicles).

Notwithstanding the ***preemption*** provisions of the CAA, however, ***we do not believe that preemption represents an obstacle to implementation by California with respect to these three particular regulations.*** First, the Truck and Bus Regulation and Drayage Truck Regulation establish emissions standards for in-use trucks and buses. Because the requirements do not apply to new motor vehicles or engines and because the burden for retrofits or replacements does not fall on original equipment manufacturers, we believe that the ***preemption*** under CAA section 209(a) does not apply and California need not secure a ***waiver*** to enforce the Truck and Bus Regulation or the Drayage Truck Regulation.

*See Approval and Promulgation of Implementation Plans*, 76 Fed. Reg. 40652, 40658 (EPA, July 11, 2011)(emphases added).

In complete disregard of the context of the foregoing findings regarding *preemption,* the CARB Defendants, as well as the district court, have attempted to forge a completely different finding regarding *the Commerce Clause* - which the EPA's SIP decision simply *did not make*. Specifically, the CARB Defendants contend that the SIP decision: (1) provided notice that the SIP approval would authorize prosecution of interstate truckers if they did not retrofit their trucks before entering California's border; and, (2) the EPA made a finding that the SIP decision

2

did not violate the Commerce Clause, thus requiring the Interstate Truckers to file a petition for review under Section 307(B)(1) of the Clean Air Act. Neither of these contentions is valid.

First, the EPA's comprehensive discussion regarding whether "preemption represents an obstacle to implementation," provides no similarly conscientious statement or analysis regarding whether the Regulation would, or could, be enforced against interstate truckers in a constitutionally permissible manner. *Compare* 42 U.S.C. § 7607(d)(3) ("notice of proposed rulemaking shall be published in the Federal Register ... [and] shall be accompanied by a statement of its basis and purpose. ... The statement of basis and purpose shall include a summary of ... (C) the major legal interpretations and policy considerations underlying the proposed rule.").

The EPA's silence was understandable -- because nothing on the face of the rulemaking disclosed that CARB sought permission to prosecute the Interstate Truckers in the first place. And even if it had, one would have expected the EPA to dedicate at least some portion of its extensive "obstacle" analysis to the Commerce Clause implications resulting from such an attempt by a single state to impose a multi-billion dollar regulatory burden on thousands of truckers from every other

state in the country, simply for the privilege of crossing its border.[1]   But it said *nothing*.  Despite this silence, the CARB Defendants unabashedly contend that the Interstate Truckers' arguments that the EPA "failed to give adequate notice cut against [their] claims that [they are] not challenging any action of the EPA . . . .," and the district court's dismissal of their §1983 claims was their "own doing." Appellees' Brief at 30.  This argument is both disingenuous and unfair.  The EPA's *non-findings* regarding the putative prosecution of interstate truckers provided *no decision* from which to file a petition.  There was simply *no there* – there.  If CARB intended to obtain EPA's approval of such a palpably unconstitutional program, it was incumbent on CARB to make sure that the rulemaking meaningfully identified it.  Its failure to do so was entirely of *its* own doing.  Because the EPA's SIP Decision was silent, the CARB Defendants cannot be heard to argue that the Interstate Truckers should have filed a petition, instead of a complaint for the violation of their civil rights.    The district court's dismissal of their § 1983 claims should therefore be reversed.

---

[1] "[A]n interested member of the public should be able to read the published notice of an application and understand the 'essential attributes' of that application *.... [and] should not have to guess the [agency's] 'true intent.'" Louis v. U.S. Dep't of Labor*, 419 F.3d 970, 975 (9th Cir. 2005) (emphasis added). In this case, it would have been bad enough if the scope of the SIP had changed between the notice and the final decision. Here, it is far worse that the CARB Defendants have attempted to re-write the SIP decision *after* it was issued!

4

**B.** **The EPA's Failure to Certify That the SIP Would Have "Nationwide Scope or Effect" as Required by Section 307(b)(1) of The Clean Air Act Confirms It Did Not Approve CARBs Unconstitutional Conduct**

In dismissing the Interstate Truckers' complaint on jurisdictional grounds, the district court ignored the fact that the EPA's SIP approval decision did not specify that it would have "nationwide scope or effect" as required by Section 307(b)(1) of the Clean Air Act. The Act expressly provides that the Administrator must "find and publish that such action is based on such a determination" as follows:

> A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title * * * which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia *if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination.*

*Id.*, 42 U.S.C. § 7607(b)(1)(emphasis added). In this case, the Administrator failed to make any "determination of nationwide scope or effect," thus defeating any notion that the Final Rule extended to the Interstate Truckers.

Notably, the CARB Defendants *concede* that the "EPA made 'no determination of nationwide scope or effect' in its published Final Rule approving the Truck and Bus Regulation." Appellees' Brief at 26. Instead, they argue that the Administrator's failure to publish such a finding "relates to venue, not jurisdiction

5

….." *Id.* This is a fundamentally untenable argument. The Administrator's actions under Section 307(b)(1) are not driven by the "venue" in which a petition may ultimately be filed. Rather, it is the Administrator's "determination of nationwide scope or effect" that ultimately drives the venue inquiry. Here, the fact that the Administrator made no such determination ends both the venue inquiry *and* the jurisdictional inquiry – in favor of the Interstate Truckers.

By failing to make such a finding, the Administrator announced to the Interstate Truckers that the SIP approval would *not* have nationwide scope or effect, *i.e.*, that it would not require truckers throughout the country to spend billions of dollars to retrofit their trucks in order to engage in interstate commerce in California. If the Administrator intended for the SIP to have such an effect, he was required by section 307(b)(1) to make that express finding. But he did not do so. Therefore, they were not required to seek direct review under section 307(b)(1).

A recent case demonstrating the controlling relevance of a "determination of nationwide scope or effect" is *Dalton Trucking, Inc. v. United States Environmental Protection Agency*, 808 F. 3d 875 (D.C. Cir. 2015). In *Dalton*, the EPA argued that under section 307(b)(1), the D.C. Circuit had jurisdiction over an EPA decision regarding another California environmental regulation, 13 CCR § 2449, because it purportedly was a "nationally applicable action" regulating "vehicles based outside of California." *Id.* 881. The D.C. Circuit rejected the EPA's argument because the

6

regulation only extended to "vehicles that are owned or operated *in* California," and was "not nationally applicable because it is limited to fleets operating in California." *Id*. (emphasis in original).

As particularly relevant here, *Dalton* concluded that the EPA failed to publish a determination of "nationwide scope and effect" under section 307(b)(1), and that "[t]here was consequently no such determination to publish." *Id*. The same rationale applies in this case. The Truck and Bus Regulation, 13 CCR § 2025, is virtually identical to the regulation at issue in *Dalton*, providing: "[T]his regulation applies to any person, business, federal government agency, school district or school transportation provider that owns or operates, leases, or rents, affected vehicles *that operate in California*." *Id*. (emphasis added). The EPA made no determination of "nationwide scope and effect," and there was "no such determination to publish." Its SIP approval thus did not extend to the Interstate Truckers.

Notably, *Dalton* rejected the EPA's attempt to circumvent its failure to comply with section 307(b)(1) by arguing that the requirements would regulate "vehicles "based outside of California," and that "the majority of affected fleets may be based in neighboring states." *Id.* The court observed that it "need look only to the face of the rulemaking, rather than to its practical effects." *Id.* (citation omitted). In short, just as the agency's decision in *Dalton* did not specify "nationwide scope and effect," the EPA's failure to make such a finding here is fatal to the CARB

7

Defendants' contention that the SIP decision has the "practical effects" of regulating "vehicles based outside of California." *Id*.

*Dalton* establishes that while a determination of "nationwide scope and effect," under section 307(b)(1) may be relevant in determining *where* venue lies, it is even more relevant in determining *who* the agency's adverse action extends to in the first place. In this case, because the face of the rulemaking did not make *any* of these findings, the CARB Defendants' should not be permitted to argue that the Interstate Truckers were required to file a petition for review of the EPA's decision in *any* venue.

In summary, the district court erred in dismissing the Interstate Truckers' 42 U.S.C. § 1983 claims because: (1) the Regulation does not extend to the Interstate Truckers as a matter of law; (2) looking "to the face of the rulemaking, rather than to its practical effects," the EPA's decision failed to extend to "vehicles based outside of California," *Id*. (3) EPA made no finding of "nationwide scope and effect." Accordingly, the Interstate Truckers' constitutional claims were not adversely affected by the EPA's SIP decision. Therefore, they were not required to file a petition for review in the court of appeals under section 307(b)(1), and their Section 1983 Complaint should not have been dismissed for failing to file such a petition.

### C.    <u>The *Dump Truck* Case is Materially Distinguishable</u>

The district court and the CARB Defendants have repeatedly sought to sidestep the merits of the Interstate Truckers' Commerce Clause claims by asserting that they are "'materially indistinguishable' from the challenge to the same Regulation" in *California Dump Truck Owners Ass'n v. Nichols*, 784 F.3d 500 (9th Cir. 2015)("*Dump Truck*"). But the fact that the two cases involve the same Regulation is where all similarity between the cases ends.

First, as demonstrated above, the EPA's SIP decision did not extend to the Interstate Truckers. By failing to make a finding of "nationwide scope and effect," or otherwise authorizing CARB to prosecute the Interstate Truckers, they were not required to file a petition for review under section 307(b)(1). Therefore, the jurisdictional analysis set forth in *Dump Truck* is inapposite.

Second, the plaintiffs in the *Dump Truck* case were, by definition, intrastate *California-based* dump truck owners ("California Dump Truck Owners Association"). They were *not* interstate truckers. Thus, both the EPA's notice of rulemaking and the final rule explicitly applied to them. Because the California intrastate truckers had notice of the rulemaking, and an opportunity to file a petition for review from its adverse impact on them, this Court's jurisdictional analysis in *Dump Truck* had a rational nexus them. But it has no rational nexus to the Interstate

Drivers here because the SIP did not apply to them in the first place, and there was ultimately no determination that the SIP had "nationwide scope and effect."

Third, the EPA's express finding in the SIP rulemaking that the *preemption doctrine* presented "no obstacle under Federal or State law," directly addressed the identical "federal preemption challenge" which the California truckers attempted to pursue in district court in the *Dump Truck* case. *Id.* at 501. Again, the fact that the EPA spoke at great length about the preemption aspects of the SIP, but said nothing about its Commerce Clause implications, proves that the focus of the SIP was on California truckers, *not* Interstate Truckers. Accordingly, the jurisdictional analysis in *Dump Truck* has a rational relationship to both the California truckers' preemption claims in that case, as well as the treatment of those claims in the EPA's SIP decision. Here, there is no such rational relationship.

Fourth, the observation in *Dump Truck* that a SIP "federalizes" a SIP has no bearing here. Because CARB did not obtain permission from the EPA to prosecute Interstate Truckers, and the EPA made no finding of "nationwide scope and effect," the SIP has no application to them regardless of whether it is "federalized." Moreover, while the EPA's approval of a SIP makes the SIP enforceable under federal law, neither CARB nor the EPA is authorized to "federalize" a violation of the U.S. Constitution. In environmental cases in particular, a number of courts have found violations of the Commerce Clause, rejecting arguments that various federal

10

environmental laws authorized state regulation impacting interstate commerce. *See, e.g*, *Environmental Technology Council v. Sierra Club,* 98 F.3d 774 (4th Cir. 1996)("Neither South Carolina, nor the intervenors have come forward with any further persuasive evidence indicating that Congress intended to permit the states, *directly or by EPA authorization*, to engage in actions otherwise violative of the Commerce Clause.")(emphasis added).[2]

In this case, the district court stated that if the EPA exceeded its authority, then the court of appeals was the appropriate forum for review. ER-41. However, once again, the EPA's *silence* proves: (1) that it did not approve CARB's prosecution of Interstate Truckers; and (2) if CARB had sought such approval, the Administrator would have devoted at least some portion of its "obstacle" analysis to the drastic Commerce Clause implications such an approval would have had. *See* 42 U.S.C. § 7607(d)(3) ("notice of proposed rulemaking shall be published in the Federal Register … [and] be accompanied by a statement of … (C) the major legal interpretations and policy considerations underlying the proposed rule.).

---

[2] *Accord State of Alabama v. United States EPA,* 871 F.2d 1548, 1555 n. 3 (11th Cir. 1989) ("Although Congress may override the commerce clause by express statutory language, it has not done so in enacting CERCLA."); *National Solid Wastes Mgmt. Ass'n. v. Alabama Dept. of Environmental Management,* 910 F.2d 713, 722 (11th Cir. 1990)("[N]othing in SARA evidences congressional authorization for each state to close its borders to wastes generated in other states … Congress has not, in our opinion, authorized Alabama to restrict the free movement of hazardous wastes across Alabama's borders.").

In either event, the EPA's silence demonstrates that there was no adverse action from which the Interstate Truckers could have filed a petition. Further, the CARB Defendants' federalization argument actually undermines their position. Because the EPA did not issue an interpretation approving their enforcement of the Regulation in contravention of the Commerce Clause, they are prohibited from enforcing the Regulation in any manner contrary to the EPA's rulemaking. The Court must defer to the EPA's interpretation – not the CARB Defendants' [3]

---

[3]The CARB Defendants cite two cases involving constitutional law claims, but they are demonstrably inapposite here. In *Virginia v. United States*, 74 F.3d 517, 523 (4th Cir. 1996), Virginia sued the United States in district court asking that certain provisions of the CAA be declared unconstitutional, alleging that the sanction of the loss of highway funds for failure to adopt specified air quality programs violated implied limitations on Congressional authority under the Spending Clause. *Id.* at 522. Here, in contrast, Plaintiffs do not challenge Congress's authority. Indeed, it is the *absence* of Congressional authorization in this case that undermines Defendants' position that they are immunized from liability for violating the Commerce Clause because the EPA approved the SIP. Defendants' authority of *Missouri v. United States*, 109 F.3d 440, 442 (8th Cir, 1997) is also not on point because, there, the court held that the constitutional claims could not be separated from the challenge to the EPA action. Here, in contrast, Plaintiffs do not challenge the EPA action. Plaintiffs seek to enjoin the Defendants – not the EPA – from enforcing the Regulation in a manner inconsistent with the Commerce Clause. In sum, notwithstanding Defendants' strident efforts to characterize Plaintiffs' Commerce Clause claims as a direct or collateral challenge to the EPA proceeding, it is an irrefutable fact that the EPA did not address or approve an interstate mandate under the SIP as now urged by Defendants.

### D.   CARB's Unconstitutional Conduct is Subject to Direct Challenge

Despite cases expressly holding that CARB's regulations are subject to direct constitutional challenge, the CARB Defendants nonetheless maintain that such actions are available only in waiver cases, not SIP cases.[4]   While the Interstate Truckers disagree with CARB's attempted distinctions, it suffices to say that CARB has successfully argued in other cases that these distinctions are irrelevant, because the Commerce Clause categorically "*does not apply to actions of federal agencies.*" In *OOIDA v. EPA*, 622 Fed. Appx. 4 (D.C. Cir. 2015), CARB argued that constitutional challenges regarding the implementation of California greenhouse gas regulations, which had been granted preemption waivers by EPA under 42 U.S.C. § 7543(b),  *should be filed in district court – not* in circuit court:

> [T]he dormant Commerce Clause *does not apply to actions of federal agencies*. *** "if [the Association] is concerned that California's rule unconstitutionally burdens interstate commerce, [the Association] could also attempt to bring a constitutional challenge directly to the California rule."

*See* Appellants' Request for Judicial Notice, Exhibit A, at 14-15 (Quoting *Am. Trucking Ass'ns Inc.*, 600 F.3d 624, 631 n.1).  The D.C. Circuit recently agreed with CARB, and dismissed the petition, holding: ("If [a] petitioner[ ] dislike[s] the

---

[4] *See, e.g., Am. Trucking Associations, Inc. v. E.P.A.*, 600 F.3d 624, 631 n.1 (D.C. Cir. 2010)("If ATA is concerned that California's rule unconstitutionally burdens interstate commerce, ATA also could attempt to bring a constitutional challenge directly to the California rule.").

substance of [California's] regulations, or if they believe the procedures the [state] used to enact them were unsatisfactory, then they are free to challenge the regulations in the state courts of California."

CARB cannot have it both ways. The D.C. Circuit's decision in *OOIDA v. EPA* demonstrates why the district court committed error in dismissing the Interstate Truckers' section 1983 claims. It further establishes that CARB is judicially estopped from maintaining its inconsistent jurisdictional stance here. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F. 3d 778, 783 (9th Cir. 2001) ("estoppel is even more appropriate where the incompatible statements are made in two different cases, since '[i]nconsistent positions in different suits are much harder to justify' ….").

## II.    EPA IS NOT A NECESSARY AND INDISPENSABLE PARTY

For the same reasons that their jurisdictional arguments fail, the CARB Defendants' insistence that the EPA must be joined as a necessary party cannot be upheld. Unlike *Dump Truck* where the EPA published its interpretation of the preemption implications of its approval of the SIP, EPA said nothing whatsoever about the Commerce Clause implications arising from any attempt by the CARB Defendants to enforce the regulation against millions of truckers residing outside of California. If the EPA had no interest in such interstate enforcement during the rulemaking proceeding, the adjudication of such claims in a section 1983 proceeding surely would not "impair EPA's interest in California's SIP." EPA's interests would

14

remain completely intact and enforceable, subject, of course, to the CARB Defendants' enforcement of the regulation in a manner that is consistent with the Commerce Clause. Nor would it be subject to "inconsistent obligations." *See* Fed. R. Civ. P. 19(a)(1)(B)(i)(ii). Because EPA did not address the Commerce Clause implications of the CARB Defendants' conduct, this action will actually *ensure consistency* between the CARB Defendants' intrastate and interstate obligations.

## CONCLUSION

The CARB Defendants urge this Court to refuse federal question jurisdiction over their attempt to hold every trucker, in every other state in the country, hostage to an unprecedented multibillion dollar regime that violates the Commerce Clause in ways that were never addressed or approved by the EPA. As demonstrated herein, EPA *could not* have approved such a regime, and EPA *did not* approve such a regime. The CARB Defendants' position is predicated on the illusory proposition that EPA's supposed approval of such a regime can be garnered from its silence. But the CARB Defendants' proposition is unsustainable on its face since the EPA was required by statute to provide public notice and comment regarding, *inter alia*, "the major legal interpretations and policy considerations underlying the proposed rule." 42 U.S.C. § 7607(d)(3)(C). Because the EPA provided no such notice or comment, made no such legal interpretations or policy considerations, and authorized no such application of the SIP, there is no foundation for the CARB

15

Defendants' contention that the Interstate Truckers were bound by the direct appeal rule when there was simply no adverse action by the EPA from which to have taken such an appeal. The district court's judgment must therefore be reversed.

Respectfully submitted,

Dated: March 7, 2016

*/s/ Daniel E. Cohen*
Paul D. Cullen, Sr.
Daniel E. Cohen
Paul D. Cullen, Jr.
**THE CULLEN LAW FIRM PLLC**
1101 30th Street NW, Suite 300
Washington, DC 20007
Tel: (202) 944-8600
Fax: (202) 944-8611

*Counsel for Petitioners*

## **CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 32-1**

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(C) because this brief contains **3,859** words, excluding the parts exempted

by Fed. R. App. P. 32(a)(7)(B)(iii).

*/s/ Daniel E. Cohen*
Daniel E. Cohen

Dated: March 7, 2016

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2016, I electronically filed the forgoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Daniel E. Cohen*
Daniel E. Cohen